FILED - GR
August 12, 2020 2:54 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JW / 8-12

# UNITED STATES COURT DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

**2:20-cv-143**
Paul L. Maloney - U.S. District Judge
Maarten Vermaat - Magistrate Judge

| | |
|---|---|
| **JOHN F. LECHNER** ) | |
| **Plaintiff** ) | ) File No. _____ |
| ) | |
| **V** ) | |
| ) | |
| **MAARTEN VERMAAT** ) | |
| **Defendant** ) | |

## COMPLAINT

There is no other pending or resolved civil action
between these parties arising out of the same
transaction or occurrence alleged in this complaint.

## FRAUD ON THE COURT

NOW COMES, John Lechner, Plaintiff, In Pro Per, and in support of his
complaint states as follows:

In the United States, when an officer of the court is found to have
fraudulently presented facts to court so that the court is impaired in the impartial

performance of its legal task, the act, known as "fraud upon the court" is a crime deemed so severe and fundamentally opposed to the operation of justice that it is not subject to any **statute of limitation**.

Fraud on the court occurs when the judicial machinery itself has been tainted, such as when an attorney, who is an officer of the court, is involved in the perpetration of a fraud or makes material misrepresentations to the court. **Fraud upon the court makes void the orders and judgments of that court.**

1. Plaintiff, John Lechner, (herein after referred to as "Plaintiff"), is an individual who resides in Chippewa County, and is a citizen of the State of Michigan.

2. Defendant, Maarten Vermaat, (herein after referred to as "Defendant") was the Assistant Federal Prosecuting Attorney in the Western District of Michigan.

3. Defendant was the Prosecuting Attorney during the trial dated June 2012.

4. At all times at issue in this matter, the events giving rise to this action arose out of activities or business conducted in Marquette County, Michigan, such that venue and jurisdiction in this Court are proper.

5. Plaintiff states that on or about June 12, 2012, during Plaintiff's Federal Trial, Defendant committed Fraud on the Court.

6. Plaintiff states that Defendant knowingly led witnesses, who were officers of the court, to commit **fraud on the court** during testimony on or about June 12, 2012.


## HISTORY

On September 26, 2011 after Lechner was attacked by 5 ATF Special Agents and Sherriff Deputies. He was transported to Marquette Jail in Marquette Michigan and he was indicted on nine charges. These charges will be addressed later in this Complaint. The Court, Judge Timothy Greeley, stated during a hearing that Lechner would be transported back to Sault Ste. Marie, MI and housed in the Chippewa County Correctional Facility where he would be close to his attorney. Lechner was not sent back to Chippewa County Correctional Facility for 10 months making it very difficult to get the information that was needed to defend himself in court.

Lechner had many problems while housed in the Marquette Jail system. Mary Lechner, John Lechner's Mother, age 95, was dying of cancer. Lechner sent a letter to Judge Greeley asking to see his Mother. Two weeks later Judge Greeley sent a reply stating that it was inappropriate for Lechner to contact the Judge.

Multiple pieces of mail went missing (Christmas cards, money, letters from friends and family. (See Affidavits Exhibit A)[1]Parts of packages that were sent were never given to him. The mail was held in Lechner's personal Bag #124. Multiple friends and relatives mailed important papers, court rules, court laws, ATF rules and regulations and anything which would help in his research for

---

[1] Affidavits Kenneth Lechner and Audrey Plastino

proving his innocence was held and not given to him until he was returned to Chippewa County Correctional Facility on July 17, 2012. One month after his Federal trial he was transported to Sault Ste. Marie, MI. Upon his entrance into Chippewa County Correctional Facility the guard brought him a bag of mail and ask him if he wanted it. Most of the missing mail was in the bag #124. Four manila envelopes from Attorney Charles Malette (P68928) (See Affidavit) with legal papers to help in Lechner's legal defense have never been found. This caused irreparable damage in the relationship between Lechner and Mr. Malette as Malette said he mailed them but Lechner never received them. Mr. Malette was released from his representation of Lechner because of this distrust caused by the Marquette Jail withholding these very important defense papers.

Public Defender Paul Peterson was given approximately 200 pictures depicting the operation of Lechner Construction to show the jury just exactly why they were in possession of explosives. These pictures were of all the equipment needed to do shore protection and build breakwaters. This consisted of drill rigs, blasting equipment, stone sorting equipment, loaders and trucks. These pictures also included rock quarries which were owned by Lechner Construction, pictures of shore protection jobs and pictures of breakwaters which Lechner Construction built over 20 plus years. Most of these 200 pictures disappeared and were never presented in court for the jury to see. Yet other pictures depicting explosions which had nothing to do with mining rock were shown to the jury.

Quite possibly, if the jury could have seen what a real mining operation looks like they would have been able to understand the scope of what is needed in this type of business?

## REBUTTAL ON ALLIGATIONS

Page 1, line 6, the Court states…*"In July 2011, Lechner was arrested and arraigned in Michigan state court for false report of a felony; false pretenses; and assaulting, resisting, and obstructing a police officer."*

Did the Court also notice that all these charges were nolle prosequi?  A nolle prosequi puts a person in the same state that he was in before the government initiated prosecution. Like it never happened. Plaintiff does not believe the court has a right to keep bringing up these allegations again and again if the charges never happened. Plaintiff argued against the nolle prosequi. The Judge refused to accept it. Plaintiff had no say and the court dropped the charges.

*"Following his arrest, he* (Plaintiff) *told authorities that, in connection with his construction business, he had previously purchased a mixture of ammonium nitrate and fuel oil, known as "ANFO."*

Mr. DeClaire testify that he did not know why the Plaintiff had a vast amount of explosives. When in truth he knew full well that Lechner Construction built shore protection and break waters. Two (2) ton of explosives equal one (1) quarry blast.

Page 1, line 14: …*Lechner was subsequently arrested and charged in federal court with transportation of explosive materials, specifically ANFO (Counts 1 and 6);*

**Count 1 and 6 were for illegal transportation of explosives**. If the court would look at **27 CFR 555.205 Movement of Explosive Materials (**Exhibit B)[2] it

_____

[2] ATF Regulation CFR 555.205

states that "All explosive materials must be kept in locked magazines meeting the standards in this subpart unless they are: …

(d) Being transported to a place of storage or use by a licensee or permittee or by a person who has lawfully acquired explosive materials under §555.106."   Plaintiff purchased the explosives legally for more than thirty (30) years.

Page 7, Line 1: The Court states:

*"ANFO is specifically identified by federal regulations as a material that may not be transported without a permit or license."*

**This is a false statement.**

The Department of Transportation is responsible for explosives in transit. **Nowhere does the ATF have jurisdiction over the transportation of explosives.**

**Count 2** was filed against Kenneth Kassab (an employee of Lechner Construction) with being a convicted felon in possession of explosives. **Kassab was found innocent.**

**Count 3 and 9** were for improper storage. If the court would look at **27 CFR 555.216 Repair of Magazines.** (Exhibit C)[3]

(b) Placed a safe distance from the magazines under repair where they are to be properly guarded and protected until the repairs have been completed…

---

[3] ATF Regulation CFR 555.216

**Count 4** possession of explosives while under indictment.

All of these false charges were nolle prosequi. "Like it never happened."

## D.O.T.'S ENFORCEMENT AUTHORITY

Lechner next asserted that counsel was ineffective for failing to argue that Lechner's prosecution for the transportation crimes under 18 U.S.C § 842 violated the Commerce Clause.

The Department of Transportation governs the transportation of hazardous materials which in makes this 18 U.S.C. § 842 (a) (3) (A) a conflicting regulation and also untrue because when they say "other than a licensee or permittee to knowingly to transport". This Code would cost the driver $1000.00 every three years to purchase the permits to purchase the different types of explosives. That plus a lot of paper work. Plaintiff believes this fabricated statement by Mr. Vermaat and Mr. Wagner, if acted on, would stop all transportation of explosives and possibly all other hazardous material in the United States.

Page 2, line 8: *On appeal, Lechner challenged the constitutionality of the statutes under which he was convicted, the nexus of his crimes to interstate commerce, the jury instructions, and the sufficiency of the evidence. This court found no error and affirmed. United States v. Lechner, 806 F.3d 869 (6th Cir. 2015).*

The Department of Transportation has jurisdiction for transportation of explosives and they found no fault in the way Lechner Construction has been transporting explosives since the business was founded (late 1970"s).

**Count 5** making a false statement to ATF:

**DISMISSED on Feb 21, 2012 by Hon Robert Holmes Bell** (Exhibit D)[4]

**Count 7** distributing explosive materials without a license.

      **ACQUITTED**

**Count 8** distributing explosive materials to a convicted felon.

      **ACQUITTED**

Page 3, Line 16: *Lechner did not demonstrate that he was maliciously prosecuted by the State of Michigan. See Newman v. Township of Hamburg, 773 F.3d 769, 772 (6th Cir. 2014). Consequently, "counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"*

Plaintiff believes that Mr. Peppler, (Chippewa County Prosecutor), worked in tandem with the federal prosecutor Mr. Vermaat and Mr. Green for almost 3 months to create these 5 fictitious felonies against Lechner. Mr. Peppler testified in Federal Court that these charges were open. Mr Peppler held on to them for approximately 16 months then nolle proseque all the charges after using them to assure a conviction in the Federal Court. **This is malicious prosecution.**

Page 3, line 21: *Lechner next claimed that counsel was ineffective for failing to submit evidence that he had valid permits to transport explosives that were issued to him between 2003 and 2006 for his construction business.*

---

[4] Order Granting Motion to Dismiss

There is no such thing as a permit to transport explosives. Lechner had a ATF permit to purchase explosives. The ATF has no authority in the Transportation of Explosives.

*Lechner next claimed that counsel was ineffective for failing to submit evidence that he had valid permits to transport explosives that were issued to him between 2003 and 2006 for his construction business. Reasonable jurists would not debate the district court's conclusion that Lechner was not prejudiced by any failure by counsel because this court assumed, without deciding, on appeal that "Lechner's facially valid permits enabled him to* **lawfully acquire** *explosives from 2003 to 2006." Lechner, 806 F.3d at 874 n.1. Nevertheless, this court upheld his conviction for unlawfully transporting explosives because he did not have a permit to do so in 2010 or 2011, when he was charged.*

**There is no permit to transport explosives.**

Council was ineffective because they should have been knowledgeable of the ATF Rules and Regulations to be able to counter the allegations of illegal transporting of explosives as there are no rules or regulations in the ATF pertaining to transportation except to say that all explosives are to be kept under lock and key unless they are being used or transported to a place of use or storage. (That is storage not transportation.) They should have spent time exploring all avenues to find these very important regulations to counter these allegations. Council should have spent time looking thru the ATF and DOT rules about transporting also, as there are no specific rules or regulations in the DOT to address this matter either except basic common sense rules pertaining to securing the load and placard placement. If council did have this knowledge then he is most definitely ineffective in his representation of Lechner.

**Line 1, Page 4:** *Because Lechner's prior permits did not affect the charges against him, he did not make a substantial showing that counsel was ineffective in this regard.*

If council would have shown the jury that the permits did exist, instead of doing nothing when special agents from ATF and Home Land Security falsely testified under oath that 1. The permits never existed, 2. That Lechner forged the permits, 3. Mark and John Lechner were flying their private plane from Cuba to Canada, 4. And it is believed that Mark is in the cocaine business**.**

**These lies would have been easy to expose.**

**This trial should have been thrown out because of the Fraud on the Court.**

Page 4, Line 4: Lechner *next alleged that counsel was ineffective for failing to argue that the Bureau of Alcohol, Tobacco, and Firearms ("ATF") never examined the facility where he stored the ANFO, although it could have done so. Lechner appears to argue that, if the ATF had done so, its agents would have explained the rules and regulations for storage and transportation of explosives; because they did not, he could not have been liable for violating rules that he did not know existed.*

Lechner believes that if the agents of the ATF were doing their job correctly his storage facilities would have been examined.  Never once in 30 plus years did the ATF ever talk to Lechner. I am sure that if the ATF would have told Lechner to renew his license for $400.00 or he would go to federal prison for 51 months and destroy him financially. Lechner would have done so. **27 CFR 555.205 Movement of Explosive materials**. The only mention of transporting is actually concerning

storage, hence all explosives are to be kept under lock and key unless the explosives are being transported.

The DOT (Department of Transportation) has jurisdiction pertaining to ground transportation.

### 27 CFR 555.24 Right of Entry and Examination.

Never once in 30 years did the ATF ever inspect his storage facilities.  ATF has the right to inspect the operation without notice during working hours.

Page 4, Line 12: *Further, evidence at trial indicated that Lechner was aware there were regulations regarding the transportation of explosives, but he did not make himself familiar with them. Lechner, 806 F.3d at 875*

Lechner told Mr. Peterson that he had been hauling explosives since the 1970's. Lechner told Peterson that typically he would put the explosives on a pallet, shrink wrap the pallet, take the fork lift and load the pallet on the truck, put cargo straps over the load, and place placards on the front, back and both sides of the vehicle. That is the law unless you are loading the explosives at the explosive plant then you are required by the plant to file a route as to what highways you will be using from the plant to the destination.

Page 4, Line 21: *Lechner was "always under the assumption that he could possess the explosives because the ATF sent him a permit to purchase them"*

Plaintiff believes he has every right to possess the explosives because he legally purchased them and nowhere in the ATF, DOT and DHS rules and

regulations does it state the explosive have to be destroyed because the permit to purchase has expired. This would be like telling a contractor that if there is material left over from a job he must destroy that material because he cannot use it on the next job. That is the same in the quarry business. If you have material (explosives) left over from a job it must be destroyed. That does not make any sense.

Page 6, Line 12: *Plaintiff next asserted that counsel was ineffective for failing to argue that Lechner's prosecution for the transportation crimes under 18 U.S.C. § 842 violated the Commerce Clause.*

Plaintiff has been transporting explosives since the 1970's and never once in those years has anyone asked him about a permit to transport. The truth is that there is no permit to transport. Lechner has talked to about 50 tucking companies and drivers and not one of these men knew anything about a permit to transport explosives.

## INTIMIDATION OF WITNESS

Page 4, Line 26: *Mark's testimony would not have changed the outcome of the Proceedings.*

Knowing that Mark Lechner was going to testify at John Lechner's (father) trial. Defense attorney, Paul Peterson, told John Lechner, that if Mark showed up at trial he would be arrested for conspiracy.

The government, (AUSA Phillip J Green) just prior to trial, sent Mark a letter saying he was the target of a drug investigation. (*Exhibit E*)[5] This was nothing more than a under handed way for the government to prevent Mark from testifying.

As soon as the trial was completed Mark's investigation went away. Mark saw what took place with his father and the federal government and was not about to upset someone in the Justice Department knowing that he was the only person to keep the company going. Even for the sake of his own father. This is how scared he was and still is to this day of the government and its power.

The Court claims that the testimony Mark would have provided would not have resulted in a different outcome at the trial. The Plaintiff disagrees. If this was true why would the federal prosecuting attorney, Phillip J Green, have this fraudulent threatening letter made up and hand delivered to Mark? If Mark would have told the jury that he owned the company and that John legally possessed the explosives and had every right to transport the explosives to a place of use or storage.

The government essentially took away any supporting facts and testimony John had towards his argument when they unethically notified Mark he was a target of a cocaine investigation. There was no investigation. It was nothing more than a ploy to rid John of a material witness that would have changed the minds of the jury and given his counsel support to make his argument.

---

[5] Exhibit A Letter to Mark Lechner from AUSA Phillip J. Green Dated February 8, 2012

The government went so far out of its way to prevent the testimony of Mark they presented him with a Model Criminal Intake Form (*Exhibit F*)[6] filed by ICE Special Agent Bruce Wagner and signed by AUSA Maarten Vermaat stating the defendants (John and Mark Lechner) are flying their personal aircraft to Canada and to Cuba. (John and Mark Lechner have flown their personal plane into Canada one time and have never flown their personal plane to any other country.) And, *"also, it is believed Mark Lechner is in the cocaine business."* This is so far from the truth yet they make this up with no other investigation or evidence prior to this to scare Mark into not testifying. This is the only report made and given to him, there was no follow up investigation. It was a scare tactic by the government as there was no investigation. Proving that the prosecution was afraid to let Mark testify again proving that Mark's testimony would have helped the jury make an informed decision.

Bruce Wagner, Home Land Security, committed **fraud on the court** when he said:

*"Defendants are flying their personal aircraft to Canada and Cuba. On their return trip in March, defendants admitted to the Inspector that they knew they were not supposed to go to Cuba because of US restrictions. Also, it is believed that Mark Lechner is in the cocaine business."*

AUSA Maarten Vermaat committed **fraud on the court** when he signed this false report.

## FRAUD ON THE COURT BY WAY OF FALSE TESTIMONY

Mr. Vermaat committed **Fraud on the Court** when he directed testimony from Mr. DeClaire, Mr. Wagner, Ms. Carvill and Ms. Coleman in such a way to make it

---

[6] Exhibit F Model Criminal Intake Form Created by Bruce Wagner ICE Special Agent and signed by Maarten Vermaat AUSA Dated January 14, 2011

14

appear they were telling the truth when in fact their testimony was skewed to misrepresent the actual truth.

Page 5, line 19:

*Fifth, the inspection of Lechner's storage facility, like the valid permits he obtained between 2003 and 2006, was not relevant to his unlawful transportation and storage of ANFO in 2010 and 2011.*

Here the Court admits that Lechner did have valid permits.

ATF Special Agent DeClaire committed **fraud on the court** when he testified in court when he said,

*"He (Lechner) presented them (Pepin-Ireco) with his then license, that looked like a real license. It was not the right color. They did not know it was not a real license at the time."*

If any of this were true, why wasn't Lechner charged with forgery?

The reason that Lechner was not charged with forgery is because everything DeClaire testified to, was a lie.

Melissa Alexander-Coleman testified deceptively:

*"To Whom It May Concern:*
*I, Melissa S. Alexander-Coleman, certify that I am a Supervisory, Legal Instrument Examiner, Federal Licensing Center, Bureau of Alcohol, Tobacco, Firearms and Explosives, United States of Department of Justice, Martinsburg, WV, and that in my official capacity, I have immediate legal custody of the records of the Bureau of Alcohol, Tobacco, Firearms and Explosives, pertaining to explosives licenses and permits within the United States to engage in business as explosives importers, manufacturers, dealers or users.*

*I do hereby certify that I have made a diligent search of the Federal Licensing System (FLS) for said records and as of October 24, 2011 two applications for explosive permits were found for John Francis Lechner, Lechner Construction, DOB: March 20, 1947, SSN: 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 however the permits were never issued. A diligent search of FLS did not reveal an issuance of any explosives license and/or permit to John Francis Lechner at any address in the 50 States of the United States and its Territories.*

> *Dated: 10/25/2011*   *Melissa S. Alexander-Coleman*
> *Supervisory, Legal Instrument Examiner"*

Furthering the deceptiveness of the above statement given by Melissa S. Alexander-Coleman is the statement made by Christopher R. Reeves in that he relies on her search without double checking the information.

*"To Whom It May Concern:*
*I, Christopher R. Reeves, certify that I am Chief, Federal Explosives Licensing Center, Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, Martinsburg, West Virginia. I further certify that Melissa S. Alexander-Coleman is personally known to me as Supervisory, Legal Instrument Examiner, Federal Explosives Licensing Center, Bureau of Alcohol, Tobacco, Firearms and Explosives, Martinsburg, West Virginia, and has legal custody of the records of the Bureau of Alcohol, Tobacco, Firearms and Explosives for the 50 States of the United States and its explosives importers, manufacturers, dealers, users of explosives, and that the signature affixed to the attached certification is the genuine signature of said Melissa S. Alexander-Coleman.*

*IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed.*

*By direction of the Attorney General:*
> *Date: 10/25/2011*   *Christopher R. Reeves*
> *Chief, Federal Explosives Licensing Center*

Lechner contacted the department of ATF September of 2016 and talked to a lady by the name of Sandy Curtis. On October 18, 2016 Sandy sent this letter:

*Dear Mr. Lechner, You sent me a note requesting a copy of your letter of clearance but you did not give me a permit number that you are listed on. If you can get this for me them I can give you a new letter of clearance.*

Lechner responded with this letter on October 24, 2016.

Dear Sandy Curtis,

In response to your letter dated October 18, 2016, 901090: CRR, 5441, you requested the permit number for the letter of clearance. The permit number is 4-MI-033-33-6F-00605 which the letter of clearance is attached to. The File Number: 4MI00605 is also on the Letter of Clearance. If you are in need of further information or need further clarification please feel free to contact Mr. Lechner.

Ms. Curtis called Lechner on October 31, 2016 and said her supervisor Christopher Reeves told her that she could not talk to him anymore.

Does the court believe that Mr. Reeves did this in good faith?

Christopher Reeves (Chief, Federal Explosives Licensing Center) lied when he wrote Lechner this letter dated November 4, 2016?    Lechner asked the ATF for a copy of these permits and a copy of the responsible person letter in the year 2012, 2013, 2014, 2015 and 2016 Lechner received copies from the court and sent copies to Christopher reeves. After 5 years this is the response from Mr. Reeves.

*In May 2003, following passage of the Safe Explosives Act, the FELC temporarily permitted all explosive permit applicants to operate under their applications if they were received by May 10 2003. The final approval and continued validity of these permits was contingent upon an ATF inspection*

*A Type 33-USER OF HIGH EXPLOSIVES permit number 4,-MI033-33-6f-00605 was issued in your name on May 19, 2003*
*A Type 35-USER OF BLASTING AGENTS permit number 4-MI033-33-6f-00606 Was issued in your name on May 19, 2003*

*On August 13/2003 you were issued a RESPONSIBLE PERSON LETTER OF CLEARANCE*

Mr. Christopher R. Reeves, states that the FELC does not maintain copies of the permits previously distributed to federal explosives permittees. Additionally, the FELC cannot reproduce explosive permits after the date of expiration.

During the search authorized by Robin Lechner, Mr. DeClaire special agent ATF and Mr. Bruce Wagner special agent. DHS took the **original permits plus all** the **records** pertaining to Lechner Construction and to this date have never returned any of these records to Mark or John Lechner.

Does the Court believe Margaret Carvill ATF when she testified?

*"Some of her duties include application inspections for people applying for various licenses, for firearms and for explosives, to possess them, to deal in them, to manufacture them. I also conduct compliance inspections of the licensees to make sure they are following the rules and regulations."*

Q    Is it a requirement for any license, that you go out and inspect the facility that's going to hold the explosives?

A    Yes.
Q    Can someone get a license if they – if that inspection is not done?

A    No.

Yet Lechner has been purchasing and using explosives since the 1970's. With no inspection.  How is this possible?

Since the Court does admit that there were valid permits issued would the Court concede that there is a possibility that these officers of the court committed **Fraud on the Court** when they testified.

Federal trial transcript Page 595: *(Exhibit G)*[7]

Mr. Vermaat: Can I bring up one issue when the jury leaves, Your Honor?

The Court: Do you want to do in on the record?

Mr. Vermaat: I would, Your Honor.

The Court: Okay. You all are excused. …(jury)

Mr. Vermaat: This licensing stuff is, unfortunately, much ado about nothing. And I know Mr. Peterson desperately wants to get in these old expired licensees from 2004 and 2005 or 2006. I don't think they are admissible,…

The Court: (The Honorable Allen Edger)… I am not going to tell Mr. Peterson he can't produce any evidence. If he wants to produce old licenses, he can do that. I mean but I can't say - - I mean I can't say they are irrelevant. I mean, I don't think they really carry the day but that's not my decision, that's the jury's decision, so –

Mr. Vermaat: Okay. Thank you, Your Honor.

Mr. Peterson: Thank you, Your Honor.

The Court: This Court is now finally in adjournment.

Plaintiff came into possession of the transcript after he was released from prison. **These 3 men deliberately withheld this information from the jury which would have had a direct impact upon the outcome of the case.**

In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function -- - thus where the impartial functions of the court have been directly corrupted."

---

[7] Federal Trial Transcript pages 595, 596, 597

The Plaintiff prays that this Honorable Court carefully examines the information submitted and comes to the conclusion that there was **fraud on the court** and will investigate this complaint to the highest degree and return this case back to the Court with the proper jurisdiction for further review and for whatever relief the Honorable Court would deem proper.

Respectfully submitted,                     Dated: August 1, 2020

John Lechner, Pro se
4234 I-75 Business Spur
Box 23
Sault Ste. Marie, MI 49783
906-203-9346



US POSTAGE AND FEES PAID

**FIRST-CLASS**
Aug 11 2020
Mailed from ZIP 49783
8oz First-Class Pkg Svc Zone 2

10710138
CommercialBasePrice          062S0012332580

stamps
endicia

## FIRST-CLASS PKG SVC

PAK N' SHIP XPRESS
PAK N' SHIP XPRESS
4234 I 75 BUSINESS SPUR
SAULT SAINTE MARIE MI 49783

C020

Shipped using PostalMate®
Pkg:320726

SHIP TO:

U.S. DISTRICT COURT
CLERK OF THE COURT
110 MICHIGAN ST NW
GRAND RAPIDS MI 49503-2363



USPS TRACKING #

9400 1118 9956 3070 6476 53



SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
MID 812 0520